UNITED STATES of America, Appellee,

v.

Charles Mac VON ROEDER, Appellant.

UNITED STATES of America, Appellee,

v.

James Albert GONZALES, Appellant.

UNITED STATES of America, Appellee,

v.

Donald Lee SCHREINER, Appellant.

UNITED STATES of America, Appellee,

v.

William Harry CARPENTER, Appellant.

Nos. 62–70 through 65–70.

United States Court of Appeals,
Tenth Circuit.

Dec. 3, 1970.

Rehearing Denied Feb. 3, 1971.

———◆———

Arthur T. Biddle, Denver, Colo., for appellant, Charles Mac Von Roeder.

Michael M. Laden, Denver, Colo., for appellants, James Albert Gonzales and Donald Lee Schreiner.

Felix D. Lepore, Denver, Colo., for appellant, William Harry Carpenter.

Gordon L. Allott, Jr., First Asst. U. S. Atty. (James L. Treece, U. S. Atty., with him on the brief), for appellee.

Before BREITENSTEIN and SETH, Circuit Judges, and TEMPLAR, District Judge.

SETH, Circuit Judge.

The First National Bank of La Jara, La Jara, Colorado, was robbed by three individuals on June 19, 1969, at about 1:45 p.m. Two of the appellants, Carpenter and Gonzales, were identified as having been involved in the robbery itself and both were described as having been armed with handguns. The money taken from the bank was stuffed into pillow cases by the departing robbers.

Most of the events crucial to this appeal transpired at the La Jara airstrip shortly after the robbery. A witness, Jose Torres, testified that his company was building a feedlot on the site of the airport and that he was working there on the day of the robbery. At approximately 2:00 to 2:15 p.m. that day he saw a small plane having difficulty trying to take off, and drove over to it. One of the four occupants, identified as Carpenter, told Torres that they wished to use the other runway and went with Torres in his truck to see if certain construction equipment could be cleared away. When Carpenter returned to the plane, it was taxied toward the other runway. The area between the runways had been torn up by construction work and the plane got stuck in the mud.

Some of the persons in the plane tried to push it out of the mud and when they could not do so, they abandoned it.

Some of the witnesses testified they saw three persons running away from the plane and others saw four. One of the men running was carrying a rifle and another was carrying a white sack. These were dropped in the open field and the men continued running. Colorado State Patrolman Elvin E. Boss drove up at about this time. The running men separated: Two ran behind a meat packing plant which is located at the side of the runway; one ran south across the open field; and the fourth ran west.

As the two approached the back of the plant, they were met by Harry Broyles, an employee at the plant who was armed. He ordered the two to drop everything and put up their hands, which they did. The two dropped a pillow case, a pair of binoculars, a pistol, and a small black scabbard. Mr. Broyles had fired one shot over their heads to add a measure of persuasion. Patrolman Boss arrived almost immediately after the shot and ordered the two men to lie down. He then took everything out of their pockets. The contents of their pockets, the gun, the binoculars, and the scabbard were placed in the pillow case. Boss later identified the two as Schreiner and Von Roeder. Patrolman Boss handcuffed the two and turned them over to a town marshal.

Boss then picked up the sack and returned to his car. As he approached his car, he was given another white pillow case by David Cerise, who had picked it up where it had been dropped by some of the individuals running from the plane. Cerise testified that when he picked up the pillow case from the open field, he looked into it and that it contained money. Patrolman Boss placed the two sacks in the back seat of his car and started after the man who had run south. He drove across the field until he could go no further and then got out and walked another fifty yards where he arrested Gonzales hiding in the brush.

During the period when Boss was arresting Gonzales, the two pillow cases remained in the unattended car. Boss testified that when he was returning to his patrol car people were just beginning to arrive in the vicinity; he did not see anyone enter or leave the patrol car; and the sacks appeared to be in the same condition as when he left them. Boss gave the pillow cases to Carter Watts, his superior, who marked one No. 1 and the other No. 2. Pillow case No. 2 contained money, the serial numbers of which had been recorded before the robbery.

William Henry Carpenter was arrested at approximately 10:00 p.m. the night of June 19, 1969, hiding in a nearby irrigation ditch.

The four defendants were tried on one count for a violation of 18 U.S.C. § 2113(a) (bank robbery), and a second count for a violation of 18 U.S.C. § 2113(d) (bank robbery with a dangerous weapon). The jury found Gonzales and Carpenter guilty on both counts. These were the two defendants who were identified by witnesses as being in the bank, and armed, and who did the actual hold-up. Defendants Schreiner and Von Roeder were found guilty only of violating 18 U.S.C. § 2113(a). Gonzales and Carpenter were given concurrent sentences under the two counts. It is from these convictions and sentences that all the defendants now bring this consolidated appeal.

In the briefs on appeal there is one argument raised mutually by Schreiner, Carpenter and Von Roeder, which is that the items seized in the vicinity of Schreiner and Von Roeder when apprehended behind the meat packing plant should not have been admitted into evidence. Basically, the contention is that Patrolman Boss did not have the authority to arrest Schreiner and Von Roeder and therefore the items he seized were inadmissible. It is conceded by appellees that because of Colorado law Patrolman Boss did not have the authority to arrest the defendants. The trial court, finding such a lack of authority, suppressed all items actually taken by Boss from the persons of Schreiner and Von Roeder in his search of their pockets. The gun, scabbard, and binoculars which had been placed by Boss in the pillow case found near these two defendants were admitted as was the pillow case itself, but all other contents of this pillow case were suppressed because of the commingling with items illegally seized from the persons of the defendants. Appellants contend that the pillow case, gun, scabbard, and binoculars should also have been suppressed. The argument is that these four items were found in a "Chimel area" under the control of defendants. In other words, they contend that since officers may search the immediate area under defendants' control incident to a valid arrest, it follows that if the arrest is invalid there is a similar immediate area which is off limits to the officer. Appellee, in reply, argues that the items in question were either (1) abandoned by Schreiner and Von Roeder or (2) were in the control of Mr. Broyles and thus not subject to constitutional restrictions.

The record shows as to these items there was actually no search here at all. In Trujillo v. United States, 294 F.2d 583 (10th Cir.1961), we noted that: "It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation." The only real objection to the seizure of the items in our case is that had it not been for the coercive actions of Mr. Broyles, they would not have been lying on the ground in plain sight. We find no distinction between this situation and the situation in Trujillo. In Trujillo, the incriminating evidence was dropped by the defendant because he was being chased by law enforcement officers. It would certainly not have been dropped in plain sight had there been no such pursuit. We did not consider the validity of the arrest in Trujillo, nor did we speculate as to whether or not the items dropped could have been the subject of a lawful search and seizure had they not been dropped. The evidence

was dropped, it was dropped under duress, and even so we found no constitutional infringement in the officers' retrieving it or in its admission into evidence. We need not reiterate the rationale of the exclusionary rule at this point, but it should be noted that the circumstances of this seizure are not even remotely suggestive of the sort of invasion of privacy condemned in Chimel and similar cases. Whether or not Patrolman Boss was authorized to arrest these defendants, he was certainly not violating their constitutional rights in retrieving the items lying in full view at the scene of their apprehension, and the seizure of such items and their admission into evidence is not precluded by the Fourth Amendment.

### No. 62–70—United States v. Charles Mac Von Roeder

Appellant Von Roeder argues that the contents of Exhibit 115, the pillow case found by Mr. Cerise in the open field and containing money taken from the La Jara bank, should not have been admitted into evidence because there was a break in the chain of custody. The pillow case in question had been placed in Patrolman Boss' car and left unattended for approximately ten minutes while Boss went to arrest Gonzales. Appellant urges that since there were several spectators in the vicinity, the contents of that pillow case could have been tampered with during the ten minutes the car was unattended. In Rosemund v. United States, 386 F.2d 412 (10th Cir.1967), we noted our agreement with the rule stated in Gallego v. United States, 276 F.2d 914 (9th Cir.1960). That rule (at 276 F.2d 917) is that:

> "The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion."

In Rosemund we stated that the same test applies to questions of preservation and custody of evidence. It appears from the record that the trial judge was not bothered by this alleged break in the chain of custody. In the absence of any affirmative showing that there was some tampering with the pillow cases, it cannot be said that the trial judge clearly abused his discretion in admitting Exhibit 115.

### No. 63–70—United States v. James Albert Gonzales

Appellant Gonzales alleges that he was denied a full and fair hearing and the effective assistance of counsel at trial. This is based upon an incident which took place shortly before he rested his case. At this time counsel for Gonzales approached the bench and informed the trial judge that his client wished to take the stand. At this point the defendant had offered no evidence whatsoever. Defendant's counsel confided in the trial judge that he could not "* * * in good conscience as an officer of this court put him on the stand. I don't know what he would testify." Furthermore, counsel asked to be allowed to withdraw if defendant took the stand. The trial judge immediately denied the motion to withdraw, and held a hearing in the absence of the jury to pursue this question with the defendant. During that hearing the trial judge informed the defendant that he had a right not to testify and that his failure to testify could not be used against him. He then informed defendant of the dangers of cross-examination and perjury. After this information was conveyed, the defendant still said he wished to testify. The trial judge informed defendant of counsel's wish to withdraw and the court's refusal to allow withdrawal. At this point Gonzales conferred with his counsel and then informed the judge that his only reluctance stemmed from a desire not to harm his codefendants if he took the stand. Accordingly, he decided not to testify, and no evidence was offered in his behalf.

We agree with the trial judge that this is an unusual situation. There are innumerable cases dealing with the right not to testify and all of its ramifications. The right to testify and the ad-

visability of doing so is not often discussed. It is clear, of course, that the defendant is competent and was entitled to testify in his own behalf. 18 U.S.C. § 3481. The decision of counsel to place or not to place his client on the stand has been described as particularly difficult, and has generally been treated as a question of trial tactics. Occasionally, with the benefit of hindsight, appellants have urged that counsel was ineffective because defendants were dissuaded from testifying, but generally that has been held not to be a denial of effective assistance of counsel since it is a matter of trial tactics. United States v. Garguilo, 324 F.2d 795 (2d Cir.1963).

The problem in this case, however, has some implications in addition to competency of counsel. One is the assertion of coercion by the trial judge in his emphasis upon the consequences of testifying. The record clearly shows a concern by the trial judge that the defendant be aware of all the pitfalls of taking the stand. We have found no cases dealing with alleged coercion by the trial judge in this situation. The closest analogy is the area of acceptance of pleas. It is well settled that the trial judge must not coerce defendants to plead guilty. Euziere v. United States, 249 F.2d 293 (10th Cir.1957). Of course, the consequences of testifying or not testifying are by no means as direct as are the consequences of pleading guilty. This analogy is therefore only suggestive.

There is one recent case which is somewhat similar. In Poe v. United States, 233 F.Supp. 173 (D.D.C.1964), aff'd., 122 U.S.App.D.C. 163, 352 F.2d 639 (1965), a section 2255 motion was granted on the ground that defendant was denied a fair trial through counsel's failure to put him on the stand. Counsel had not put the defendant on because he thought that certain damaging questions could be raised on cross-examination. However, as a matter of law those questions could not have been raised. Under the circumstances, including an absence of any other evidence in defend-

ant's behalf, the trial was held to have been unfair by the same judge who had been the trial judge. Our case is, of course, different. Gonzales' counsel was not laboring under any misconception as to what could be brought out on cross-examination and in our case it is not the trial judge himself who is being moved to find the alleged unfairness. On the other hand, in Poe there was no alleged coercion on the part of the trial judge, there was no suggestion that the defendant was as desirous of testifying as was Gonzales, nor was there an attempt by counsel to withdraw.

■ There is nothing in the record to suggest that Gonzales was anything but a mature and experienced person. The record of the colloquy between the defendant and the trial judge when this matter was considered shows that Gonzales clearly understood the situation; and he asked very pertinent questions as to the consequences of his appearance as a witness. A careful reading of the record leads to the conclusion that he was fully satisfied with the explanations and understood that his counsel could not withdraw. His closing comments demonstrate that he decided to abide with the advice of his attorney. He conferred with his attorney during the course of the conference with the judge, asked some additional questions, received answers from the judge, and acknowledged that he understood. He then said he would "go by" what his attorney said. This was followed by some more questions and explanations, and the defendant then said: "Well, I will just leave it up to my attorney." The defendant and his attorney then conferred again, and the attorney said: "It has been resolved, Your Honor. Mr. Gonzales will not take the stand." The record thus shows a complete examination of the issue, and that defendant was then satisfied with his decision, and that it was arrived at after proper consideration. We find no coercion on the part of the judge in his explanations of the consequence of the defendant appearing as a witness. They were care-

fully made and understood, and a complete explanation was in order. It is further clear that the defendant understood his attorney would continue to represent him and he did so. This issue is thus reduced to a matter of competency of counsel, and we find nothing that approaches inadequate representation.

*No. 64–70—United States v. Donald Lee Schreiner*

◼ Appellant Schreiner contends that the trial court committed reversible error in refusing to give his tendered instruction (No. 1) concerning accessories after the fact. The desired instruction stated:

> "Even though you should find beyond a reasonable doubt that any defendant, after the robbery was committed, assisted those who committed it in their escape, you cannot find the defendant guilty unless you should believe beyond a reasonable doubt that prior to or during the robbery he aided, counseled, or in some manner abetted or assisted in its commission."

We do not deny that it is reversible error for the trial court not to adequately present a defendant's theory of the case if the instruction is properly tendered and is supported by the evidence. Speers v. United States, 387 F.2d 698 (10th Cir.1967), cert. den., Sidary v. United States, 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1968). The issue here is whether or not the evidence and the law support appellant's theory of the case. We think they do not. All evidence concerning appellant Schreiner indicates his participation in the escape phase of the bank robbery. It is true that there is no evidence placing Schreiner in the bank, but that is not necessary for him to be found guilty as a principal. The escape phase of a crime is not, as appellant apparently argues, an event occurring "after the robbery." It is part of the robbery. One who participates in and assists in the escape of the parties who were in the bank aids and abets the bank robbery, and is properly charged as a principal. See 18 U.S.C. § 2. There-

fore, it was not error to refuse to give the tendered instruction.

*No. 65–70—United States v. William Harry Carpenter*

◼ During the investigation of the robbery, several of the potential witnesses were shown photographs which included those of the defendants. Appellant Carpenter contends that his counsel should have been present at the time his picture was identified by one of the witnesses. We have held, however, that the Wade doctrine does not extend to cases such as this where the witness is merely shown photographs without a line-up or any form of confrontation of the accused. Rech v. United States, 410 F.2d 1131 (10th Cir.1969), cert. den. 396 U.S. 970, 90 S.Ct. 457, 24 L.Ed.2d 438 (1969); McGee v. United States, 402 F. 2d 434 (10th Cir.1968), cert. den. 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969).

◼ ◼ Appellant Carpenter also alleges error in sentencing him to concurrent sentences under both 18 U.S.C. § 2113(a) and § 2113(d). We agree. Appellee argues that the sentences, since not consecutive, are not invalidly pyramided as precluded by Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L. Ed.2d 370 (1957). We think however that even concurrent sentences under both sections 2113(a) and 2113(d) are precluded since the recent case of Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In Benton the Court held that an invalid sentence may be overturned even though it was for a shorter term than an additional sentence with which it was to run concurrently. Prior to Benton it had generally been held that in such cases there was not a justiciable case or controversy since the important consideration was time served, which would not be affected by overturning the invalid shorter concurrent sentence. However, in Benton the Court noted that real harm could result, for example, under the habitual criminal statutes of some States, from not allowing such an invalid concurrent

sentence to be attacked. Thus, when we consider the Prince holding that sentences for the section 2113 offenses cannot be pyramided along with the Benton holding that concurrent sentences may be overturned despite the lack of effect on time served, we conclude that appellant Carpenter was improperly sentenced.

We affirm each case, No. 62–70, Von Roeder; No. 63–70, Gonzales; No. 64–70, Schreiner, and No. 65–70, Carpenter. However, case No. 65–70, Carpenter, is remanded for resentencing of the defendant, and case No. 63–70, Gonzales, is remanded for resentencing of the defendant. Otherwise each case is affirmed.