**UNITED STATES of America,**
**Appellee,**

v.

**Joseph Ralph FIORE, Defendant-**
**Appellant.**

**No. 869, Docket 35229.**

United States Court of Appeals,
Second Circuit.

Argued April 23, 1971.

Decided May 17, 1971.

Joseph W. Ryan, Jr., Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E. D. New York, and David G. Trager, Asst. U. S. Atty., of counsel), for appellee.

Henry K. Chapman, New York City for defendant-appellant.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

After a jury trial in the District Court for the Eastern District of New York, Joseph Ralph Fiore was convicted on all counts of a four-count indictment charging him with sales of heroin on December 3, 1969, and January 12, 1970, in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4704(a).

Late in November 1969, Thomas Bennett, Jr., a confidential informant apparently used in previous narcotics investigations, was employed by the Government to aid in the investigation of the activities of Fiore, proprietor of a small store in the Astoria section of Queens, N. Y. There was extensive trial testimony by narcotics agents that on December 3, 1969, Bennett entered the store with $1,000 in Government funds and no narcotics on his person and ultimately emerged without the $1,000 but with a white paper bag including, among other things, a plastic bag containing about two-thirds of an ounce of heroin. There was also a recorded (and subsequently transcribed) telephone conversation between Bennett and Fiore, initiated on the next day by one of the agents, relating (at least inferentially [1] to a shortage in the quan-

---

1. The conversation ostensibly concerned a shortage of shoe polish. There was testimony that the bag of heroin was contained inside a shoe-polish carton, one of the items with which Bennett emerged upon leaving Fiore's store.

tity of heroin delivered. On January 12, 1970, Bennett again entered the store with $1,000 in Government funds and with no narcotics on his person. Once more he emerged without the money, this time bearing a magazine bound with Scotch tape around the edges, which contained a plastic bag filled with heroin—approximately the same quantity as before.

Bennett testified before the grand jury concerning his conversations with Fiore and his purchases within the store. Thereafter he was sentenced by a New York State court to a term in Clinton State Prison. Shortly before the trial the State released him temporarily to the custody of the federal authorities, and he went over his proposed testimony with one of the agents and the prosecutor.

After the jury had been selected, the prosecutor informed the judge, out of the jury's presence, that Bennett had experienced a sea change and was refusing "to even physically cooperate in coming up to this courtroom." Testimony by one of the agents consumed the balance of the day and part of the next. Bennett's attitude had not changed. He was forcibly brought into the courtroom by two marshals and two narcotics agents, the jury having been excused, and the judge persuaded him to sit in the witness chair. After the jury's return, the judge asked Bennett to raise his right hand and be sworn. Bennett answered that he refused to testify. After an inconclusive colloquy at sidebar,[2] subsequent to which Bennett again refused to be sworn, the court instructed the prosecutor to "proceed." Preliminary questions were met with refusals to answer or statements of ignorance or forgetfulness why he (Bennett) had been brought to court. When the prosecutor asked permission to examine Bennett "as a hostile, reluctant witness," defense counsel said "the question of reluctance is not the issue." The court then ruled that Bennett "can now be questioned as a hostile witness." The prosecutor proceeded to ask Bennett whether he had testified before the grand jury, and Bennett said "I don't remember." There followed a protracted *pas de deux*, with the prosecutor reading portions of Bennett's grand jury testimony, framed by the questions, "Were you asked the following questions and did you give the following answers?" and "Were you asked those questions and did you give those answers?," and with Bennett almost invariably offering such responses as "I might have," "I don't recall," "I don't know whether I did or not," or "I refuse to answer." No pertinent objections were made by defense counsel. After a luncheon recess Bennett said he would like to get a lawyer and indicated that he wished an "adjournment" for that purpose. The court decided to proceed and asked Bennett "to please cooperate to the extent of being asked questions and make whatever answers you want," assuring him that it would "protect" him. The reading of questions and answers before the grand jury resumed, with results similar to those already described. At the end of this, defense counsel said, "I have no questions on cross."

On the next day, after testimony by another agent, the Government called the reporter who had taken down the grand jury testimony in order to authenticate the questions and answers. Again there was no pertinent objection, and the Government rested. Defense counsel then moved to strike all of Bennett's testimony on the ground that he had not been sworn. The judge denied

**2.** After the judge had requested Bennett to take the oath and told him he could refuse to testify after being sworn, defense counsel asked to "make a suggestion." This was that "[w]e are treading on dangerous ground" and "[y]ou [the judge] may be exceeding your author-ity to have him take the oath." So far as we can gather anything from this, it is that counsel was making a suggestion against the judge's threatening to place Bennett in contempt for what might be a legitimate exercise of the privilege against self-incrimination.

this, not as having been made too late but as lacking merit. In its charge the court instructed that if the jury found Bennett to have been a recalcitrant witness, his grand jury testimony might be used as affirmative evidence of the facts stated; to this defense counsel excepted.

■ If prompt objection had been taken, it would have been clear error to allow Bennett's grand jury testimony to be received as evidence—indeed, to have allowed the prosecutor to ask him any questions at all. Although F.R.Cr.P. 26 does not expressly require an oath, it refers the admissibility of evidence and the competency of witnesses to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." There is no room for doubt what those principles require in this context. Wigmore instructs that "for *all testimonial statements made in court* the oath is a requisite," 6 Evidence § 1824 (3d ed. 1940) (emphasis in original). See also Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, Rule 603, reprinted in 51 F.R.D. at 385.

■■ The Government's argument is not that anything said by Bennett while in the witness chair was receivable—indeed, he said nothing that was of any value to its case—but that, under the principle enunciated in United States v. De Sisto, 329 F.2d 929, 933–934 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), and followed in United States v. Insana, 423 F.2d 1165, 1170 (2 Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970) and United States v. Mingoia, 424 F.2d 710, 712–713 (2 Cir. 1970), Bennett's presence rendered admissible his previous sworn testimony before the grand jury. The reliance is misplaced. In these cases the witness had been sworn and was available for meaningful

cross-examination on the issue whether his present alleged lack of recollection of the defendant's participation in the crime or his previous sworn testimony to the contrary was the truth—indeed, although this is not decisive, in *De Sisto,* the alleged lack of specific recollection had been brought out in cross-examination itself. Similarly Rule 801 of the proposed Federal Rules of Evidence, in defining certain prior statements as not hearsay, limits the definition to cases where "the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," 51 F.R.D. at 413, see also at 415, 416. Our decisions, and the considerably broader proposal in Rule 801, rest on Wigmore's view that "The whole purpose of the Hearsay rule has been already satisfied [because] the witness is present and subject to cross-examination [and] [t]here is ample opportunity to test him as to the basis for his former statement." 3 Evidence § 1018 (3d ed. 1940), quoted in California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Here Bennett was not subject to cross-examination by the defendant, both because he had refused to take the oath and thus was not a witness at all and because he had made it evident that he would refuse to give testimony of any sort. Under such circumstances the admission of his grand jury testimony would appear to offend not only the hearsay rule, even in the liberalized form adopted by this circuit, see 3A Wigmore, Evidence § 1018 at 997–998 (Chadbourn rev. 1970),[3] but the confrontation clause of the Sixth Amendment as well, Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

The Government says that, even if this be so, we should nevertheless affirm because of the failure to make appropriate objection until the Gov-

3. If Bennett's testimony had been given at a prior trial, where he would have been subject to cross-examination, rather than only before the grand jury, where he was not, his conduct at the instant trial might have rendered him "unavailable," cf. 5 Wigmore, Evidence § 1042, 4 Wigmore, Evidence § 1317(b) (3d ed. 1940), and his testimony thus admissible.

ernment had rested its case.[4] If we were faced only with an omission to take the oath and Bennett had been cross-examined or there was any indication that he could have been, the argument would have much in its favor, see Wilcoxon v. United States, 231 F.2d 384, 387 (10 Cir.), cert. denied, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956). But those were not the facts here. Even with the facts as they were, we would hardly have reversed if the judge had sustained the belated objection when it was made, and had instructed the jury to disregard the grand jury testimony; despite the practical impossibility of the jury's doing so, this would have been proper in light of counsel's failure to make timely objection. But here, having been apprised of the objection, sound as we hold it to have been, the judge overruled it and told the jury it might consider the testimony. Although we can understand his sympathy with the prosecution's unexpected predicament, we cannot square his rulings either with recognized principles of evidence or with the Sixth Amendment's command.

■ While we are thus constrained to reverse the conviction, we refuse to direct dismissal of the indictment, as Fiore requests. We are by no means certain that, in the absence of any significant evidence by the defense, the testimony of the agents was not sufficient to take the case to the jury. Furthermore, no one can be sure that Bennett's attitude at a second trial will be the same as at the first. The record does not disclose the length of his New York sentence; as he approaches the end of it or if he is now or soon becomes eligible for parole, the prospect of a federal sentence for contempt may have a more chastening effect. If this does not happen, it is not beyond possibility that the Government may be able to establish that Bennett's recalcitrance was due to

"the suggestion, procurement or act of the accused,"[5] see Motes v. United States, 178 U.S. 458, 471–472, 20 S.Ct. 993, 998, 44 L.Ed. 1150 (1900) in which event, as recognized in Douglas v. Alabama, supra, 380 U.S. at 420, 85 S.Ct. 1074, a different rule would apply. If ever there was a case where resort to the principle of Bryan v. United States, 338 U.S. 552, 560, 70 S.Ct. 317, 94 L.Ed. 335 (1950), is appropriate, this is it.

The judgment of conviction is reversed and a new trial ordered.

---

4. We cannot take the colloquy recited in fn. 2 as an adequate objection.

5. The Government does not suggest that if defense counsel had made earlier objection, it could have adduced proof of this at the trial.