UNITED STATES of America,
Plaintiff-Appellee,

v.

Phillip R. BALANO,
Defendant-Appellant.

No. 78–1314.

United States Court of Appeals,
Tenth Circuit.

Argued May 16, 1979.

Decided Dec. 18, 1979.

Rehearing Denied May 20, 1980.

John C. Humpage, Topeka, Kan., for defendant-appellant.

Edward D. Holmes, Dept. of Justice, Kansas City, Mo., with James P. Buchele, U. S. Atty., Topeka, Kan., for plaintiff-appellee.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Balano has twice been tried, the first trial resulting in a hung jury. Following his conviction on one count of violating 18 U.S.C. § 3 (1976) as an accessory after the fact to interstate transportation of stolen goods, Balano raises several issues on appeal. His primary contention is that the district court erred in admitting into evidence the grand jury testimony of a convicted participant in the crime, after the witness had refused to testify at trial because of alleged coercion by Balano. Balano also challenges the sufficiency of the evidence to support the conviction, the trial court's refusal to permit the introduction for impeachment purposes of another participant's answer to an interrogatory, the court's refusal to dismiss the indictment at the end of the first trial, and the sufficiency of the indictment. We reject each of Balano's arguments and affirm his conviction.

I.

Balano was originally charged in two of the three counts of an indictment. Count I, which did not name Balano, charged that one Samuel Bernstein aided and abetted Dominick J. Carullo and James E. Johnston in the interstate transportation of stolen coins. The coins were stolen in Kansas, removed to Missouri, and then returned to Kansas. Carullo and Johnston were separately indicted; each pleaded guilty and was sentenced to five years in prison. The fence to whom most of the stolen coins were sold, William Reese, was also separately indicted, and he too pleaded guilty. Following a hung jury in the first trial, Bernstein's case was severed from Balano's. In Count III, Balano and Saul Rosen, his partner in Sol's Loan Office in Kansas City, Kansas, were charged with transporting the stolen goods in interstate commerce. Before submitting the case to the jury, the trial court removed Count III from the indictment because of insufficient evidence.

In Count II, the only count remaining directly in issue on appeal, Balano and Rosen were charged as accessories after the fact for knowingly aiding Carullo and Johnston after the robbery.[1] The trial court

1. In full, Count II reads:

That on or about the 13th day of April, 1974, in Kansas City, in the State and District of Kansas, PHILLIP R. BALANO and SAUL ROSEN, defendants herein, knowing that Dominick J. Carullo and James E. Johnston, a/k/a Sonny, not named as defendants herein, had transported stolen gold coins of a

denied Balano and Rosen's motion for acquittal at the close of the evidence and, after the jury could not reach a verdict, denied a renewed acquittal motion.[2] At this first trial the government relied almost exclusively on the testimony of Johnston, a participant in the robbery, whose testimony linked Balano marginally, but clearly, with the crimes. The other participant, Carullo, refused to testify even after a grant of immunity. He was cited for contempt and sentenced to an additional six months' imprisonment. Before the second trial Carullo indicated that he would again refuse to testify. After an evidentiary hearing, the court permitted the introduction of Carullo's grand jury testimony, which tied Balano more closely to the criminal scheme. Balano was convicted, his acquittal motions were denied, and this appeal resulted.

## II.

On both statutory and constitutional grounds, Balano challenges the admission of Carullo's grand jury testimony. Balano first questions the trial court's finding that the necessary requirements were present to justify admission of the hearsay evidence under Fed.R.Evid. 804(b)(5). Even if statutory justification for admission did exist, however, Balano charges that the admission of the grand jury evidence in this case denied him his constitutional right "to be confronted with the witnesses against him." U.S.Const. amend. VI.

The trial court agreed that, absent waiver, the prior grand jury testimony of an unavailable witness should be inadmissible as evidence of a defendant's guilt. However, the court held that Balano had effectively waived his right to confront Carullo by threatening his life. Although we will not lightly accept findings of waiver of the constitutional right of confrontation, we hold that the trial court's careful consideration of the evidence of coercion justified its finding in this case. Because we find a waiver of confrontation rights, we need not consider whether the testimony met the standards for admission under Rule 804(b)(5). A valid waiver of the constitutional right is a *fortiori* a valid waiver of an objection under the rules of evidence.

### A.[3]

We must reach the waiver question because we find that, absent waiver, Balano's Confrontation Clause rights were violated. In its Memorandum and Order, the trial court correctly stated that, at the time, "[e]ven with . . . indicia of reliability, it appears no Court has been willing, without more, to sanction use of an unavailable witness' grand jury testimony as substantive evidence at trial to reflect upon a defendant's guilt." Record, vol. 1, at 108. *See United States v. Carlson,* 547 F.2d 1346, 1357 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. Fiore,* 443 F.2d 112, 115 (2d Cir. 1971). Because of *United States v. West,* 574 F.2d 1131 (4th Cir. 1978), the

value over $5,000 from Mission, Kansas, to Kansas City, Missouri, and to Kansas City, Kansas, in violation of Section 2314, Title 18, United States Code, did knowingly relieve, receive, comfort and assist the said Dominick J. Carullo and James E. Johnston, a/k/a Sonny, in order to hinder or prevent their apprehension for trial and punishment; that is to say, the said PHILLIP R. BALANO and SAUL ROSEN, well knowing that Dominick J. Carullo and James E. Johnston, a/k/a Sonny, had transported in interstate commerce stolen goods valued at $5,000 or more as aforementioned, did provide Dominick J. Carullo and James E. Johnston, a/k/a Sonny, new clothing to replace the clothing used in the above-mentioned crime, did provide Dominick J. Carullo shaving equipment and lavatory facilities in order for the said Carul-

lo to shave off his mustache and beard, and did provide Dominick J. Carullo and James E. Johnston, a/k/a Sonny, a suitcase in which to hide the stolen gold coins, all for the purpose of aiding and assisting the said Dominick J. Carullo and James E. Johnston, a/k/a Sonny, to escape apprehension for trial and punishment.

All in violation of Title 18, United States Code, Section 3.

Record, vol. 1, at 1–2.

2. Because Rosen died before the commencement of the second trial, the indictment against him was dismissed.

3. Part II.A. reflects the analysis of Judge McKay only.

district court's statement is no longer correct. In *West*, the Fourth Circuit permitted introduction of grand jury testimony (after the death of the witness) because of strong guarantees of the testimony's reliability. *See also United States v. Garner*, 574 F.2d 1141 (4th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978). We believe, however, that *West* improperly reduces the Confrontation Clause to a mere consideration of evidentiary value.

The *West* court recognized that the Confrontation Clause and the historical hearsay rules are not congruent. The Supreme Court has "more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), *citing Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). *See also United States v. Roberts*, 583 F.2d 1173, 1176 (10th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979). Although "the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots . . . [the Supreme] Court has never equated the two." *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). Despite its recognition of these differences, however, the Fourth Circuit found that "the same circumstances suffice to meet the requirements of [Rule] 804(b)(5) and of the Confrontation Clause." 574 F.2d at 1138. We disagree.[4]

The Confrontation Clause is not concerned only with the inherent veracity of hearsay statements. "[W]e should not be lured by the possible reliability of out-of-court statements, important as that is in the consideration of the problem as a rule of evidence, away from the ultimate constitutional prescription [of the Confrontation Clause], which is the regulation of trial procedure." *United States v. West*, 574 F.2d at 1139 (Widener, J., dissenting). The Clause was aimed at "the particular vice . . . of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates." *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). The Clause is directed not primarily at content but at "compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). Under these standards, Carullo's grand jury testimony fails to satisfy the requirements of the Confrontation Clause. It is the equivalent of an *ex parte* deposition, it was not redeemed by a court appearance of Carullo, and it was secured through a procedure that has become the arm of the "examining magistrate."[5]

We do not mean to elevate cross-examination, under all circumstances, to the level of a constitutional requirement. Read narrowly, the Confrontation Clause would altogether preclude the use of hearsay evidence in criminal trials unless the hearsay declarant was available for cross-examination. No major American court has gone so far, *see Dutton v. Evans*, 400 U.S. at 82, 91 S.Ct. 210, and we certainly do not. We can also

---

4. We recognize that the Supreme Court has appeared to give overriding significance to "indicia of reliability." *See Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). In *Mancusi*, however, the hearsay statements came from testimony at an earlier trial, and the determinative indicium of reliability was an "adequate opportunity to cross-examine" at that earlier trial. *Id.* at 216, 92 S.Ct. at 2314.

5. In characterizing grand jury testimony for Confrontation Clause purposes, we should recognize that grand juries have largely lost their function as protectors of individual rights and have become agents of the prosecution. *See* M. Frankel & G. Naftalis, *The Grand Jury: An Institution on Trial* 99–102 (1977). If we were to ignore this reality in our analysis, we would be using a fictional protection of individual rights as an excuse to remove the actual protections of the Confrontation Clause.

agree with the Fourth Circuit that "[t]he Supreme Court has never intimated . . . that cross-examination is the only means by which prior recorded testimony may be qualified for admission under the Confrontation Clause." *United States v. West*, 574 F.2d at 1137. *See United States v. Roberts*, 583 F.2d 1173, 1176–77 (10th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979) (co-conspirator exception to hearsay rule). Nevertheless, the Supreme Court has placed great emphasis on cross-examination—whether at the instant trial or at another trial or hearing—as a protector of confrontation values. "[The Court's] cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), *quoting Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). *See also California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). When the hearsay evidence is grand jury testimony—that is, when the prosecution itself has secured the hearsay testimony—we are unwilling to dispense with cross-examination as a required element of confrontation.[6]

Cross-examination in the instant case would have been particularly important because much of the damaging grand jury testimony—questions as well as answers—referred to an indefinite "they" performing the illegal acts. "They" apparently were Rosen and Balano. Because Carullo's testimony placed Balano in situations that Johnston's testimony had not,[7] however, Balano plausibly argues that cross-examination was necessary to ferret out the alleged respective acts of Rosen and Balano.

### B.

Although confrontation values are of constitutional magnitude, they may, of course, be waived. *See Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966). We must determine whether threats by a defendant on a witness' life may constitute a waiver. We must also decide whether the evidence of such threats was, in this case, sufficient to warrant the judge's determination that coercion existed. We answer both questions affirmatively.

In *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), the Eighth Circuit held that "if the witness's refusal to testify was procured by the accused, no confrontation rights are denied." 547 F.2d at 1358. In *Carlson*, a government witness refused to testify because, as he intimated to government agents, he had received threats from the defendant. The district court heard testimony from the agents to whom the witness had spoken and found that the defendant had indeed made the witness unavailable for trial.[8] The Eighth Circuit noted:

---

**6.** Under no circumstances, including coercive acts by a defendant, should cross-examination of an *available* witness not be constitutionally mandated. *See United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977). In *Mathis*, a threatened witness did not testify although she had "explicitly stated that if she was ordered to testify, she would not refuse to do so." *Id.* at 298. The Fifth Circuit found her to be an available witness under the evidence rules, and held that statements made by her to government agents were inadmissible hearsay. Her live testimony would have been "more probative on the point for which it [was] offered." Fed.R.Evid. 803(24). Although the court did not reach the Sixth Amendment issue, it did

express "grave doubts" that those rights were not violated. 559 F.2d at 299.

**7.** For example, Johnston testified that *Rosen* had gotten clothing for Carullo and Johnston. Record, vol. 3, at 32; vol. 5, at 223. Carullo's testimony attributed the clothing to "they." Record, vol. 5, at 307. Johnston specified that Rosen had provided a suitcase for the robbers. Record, vol. 5, at 223. Carullo, however, referred again to "they." Record, vol. 5, at 308.

**8.** The agent also testified that the witness had reiterated the truthfulness of his grand jury testimony. 547 F.2d at 1353.

[T]he law [should not] permit an accused to subvert a criminal prosecution by causing witnesses not to testify at trial who have, at the pretrial stage, disclosed information which is inculpatory to the accused. To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the underlying purpose of the confrontation clause.

*Id.* at 1359. We agree that, under the common law principle that one should not profit by his own wrong, coercion can constitute voluntary waiver of the right of confrontation.[9]

■ We also believe that the trial court had before it sufficient evidence to justify its finding of coercion. We recognize that often the only evidence of coercion will be the statement of the coerced person, as repeated by government agents. Consequently, a reasonable doubt standard for admission might well preclude a finding of waiver, no matter how reprehensible the defendant's conduct. On the other hand, we do not wish to emasculate the Confrontation Clause merely to facilitate government prosecutions. Thus, a prima facie showing of coercion is not enough. We hold, therefore, that before permitting the admission of grand jury testimony of witnesses who will not appear at trial because of the defendant's alleged coercion, the judge must hold an evidentiary hearing in the absence of the jury and find by a preponderance of the evidence that the defendant's coercion made the witness unavailable.

The district court's determination in this case followed a careful, thoughtful hearing,

and was supported by sufficient evidence. The district judge noted, prior to receiving evidence at the hearing, that the government would be required "to satisfy the Court that threats imminented [*sic*] from the defendants to the witness 'shutting his mouth' so to speak." Record, vol. 8, at 9–10. To that purpose, he heard testimony first from Carullo himself who, although he would not discuss his reasons for refusing to testify at Balano's trial, reiterated that his grand jury testimony was truthful and that he had previously so told a government agent.[10] *Id.* at 23, 25. FBI agent Reuschlein then testified in detail about his various meetings with Carullo. Reuschlein testified that at an interview in April 1976 (following the grand jury testimony and Carullo's imprisonment), Carullo stated "that there had been different threats made, and for fear, and the fact that he was recently married, and was a resident of the City . . ., and that he wanted to continue to live in that area," he would not testify. *Id.* at 32–33. In talking with Reuschlein, Carullo mentioned two specific threats. First, an employee at his uncle's bar received a phone call to the effect that "if anybody testified in the matter . . ., they could be killed." *Id.* at 33. Second, on an occasion when Carullo was working at another bar, Pat O'Brien's, Balano himself came in and said, "Well, you know, we could get somebody killed if any statements were made regarding the matter."[11] Agent Reuschlein's notes, made at the time of the interview, confirmed his testimony. *Id.* at 34–36.

---

**9.** *United States v. Mathis,* 559 F.2d 294 (5th Cir. 1977), discussed at note 6 *supra,* contains language that Balano believes supports his position: "[O]ur law provides methods to alleviate these deplorable practices [intimidation of witnesses] other than through interpretations of evidentiary rules which may seem to be fair in a particular case yet establish an impermissible legal precedent for subsequent cases." *Id.* at 299–300. However, since the intimidated witness in *Mathis* was an "available" witness, the waiver issue was not addressed.

**10.** Under our analysis, based on waiver, we are not relying on Carullo's failure to repudiate his

grand jury testimony as an indicium of reliability that itself justifies admission. However, Carullo's consistency could reasonably have led the trial court to give greater weight to Carullo's statements about coercion.

**11.** Balano suggests that this threat was "obviously extremely ambiguous." Reply Brief for Appellant at 13. In discussing the possible meanings the statement could have, however, Balano provides only examples that would give pause to any reasonable person who is considering testifying. *Id.* We do not see any ambiguity in intended effect.

As a result of the evidence of threats made by Balano, the district court concluded that Balano had waived his right to confrontation and properly ruled that the Carullo grand jury testimony was admissible against Balano but not against the other defendants. Record, vol. 1, at 109.

At the beginning of the second trial, Balano's attorney produced a letter written to him by Carullo. In the letter Carullo indicated that he did not remember seeing Balano at Pat O'Brien's and attributed his earlier statements to governmental pressure.[12] The district court determined that this letter affected only the question of credibility, which he as the fact-finder for admissibility purposes had to resolve. The court felt that the letter showed that Carullo was scared and was saying, in essence, "I just don't want to cause trouble for anyone." Carullo, that is, might well have come to realize that his grand jury testimony, which he did not repudiate, was likely to be admitted and that his life was therefore still in danger. Record, vol. 4, at 21–22. Because of the evidence he had at his disposal in making this determination, we cannot say that the district judge's resolution was error.

### III.

In challenging the sufficiency of the evidence to support his conviction, Balano urges that the government did not prove the existence of an underlying offense against the United States, Balano's knowledge of that offense or any criminally liable assistance by Balano. Any of these failures of proof would require reversal. However, viewing the evidence in a light most favorable to the government, as we must on appeal, we reject these contentions.

The applicable accessory statute requires that the defendant act "knowing that an offense against the United States has been committed." 18 U.S.C. § 3 (1976). The indictment itself contained greater specificity, alleging that Balano had acted "well knowing that [Carullo and Johnston] had transported in interstate commerce stolen goods valued at $5,000 or more." Record, vol. 1, at 2. Balano charges that his knowledge of neither the fact of interstate transfer of the coins nor of the coins' value was proven. He further argues that the accessory after the fact charge requires proof of the completion of the underlying crime but that trial evidence "showed conclusively that Carullo and Johnston were still in the escape phase of their crime and had thus not yet completed it." Brief for Appellant at 38. Thus, Balano argues, he should have been charged, if at all, as an aider and abettor under 18 U.S.C. § 2 (1976).

This court has held that the prosecution need not prove elements of an indictment that are mere surplusage. See United States v. Archer, 455 F.2d 193, 194 (10th Cir.), cert. denied, 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972). The coins' value and their interstate transmission do not affect the existence of the underlying crime, but merely the existence of federal jurisdiction. We do not require the government to prove the defendant's knowledge of jurisdictional elements. See United States v. Feola, 420 U.S. 671, 685, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); United States v. Hobson, 519 F.2d 765, 769–70 (9th Cir.), cert. denied, 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975); United States v. Smaldone, 485 F.2d 1333, 1348–49 (10th Cir. 1973), cert. denied, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). Evidence was certainly admitted from which the jury could infer that Balano

---

12. The body of the letter addressed to Balano's attorney reads:

I want to clarify a statement I made more than two years ago, When I was under duress and pressure of the Federal Government, And at a time when I was personally involved in serious litigation.

It is possible that because of mental anguish and severe pressure at the time, That I may have said I was with Phil Balando [sic]

at Pat O'Briens, but I do not remember seeing him or talking to him.

In a very short time I will be able to return home, And have but one desire, to live quietly, And peacefully, with my wife as we try to catch up three lost years in our lives. In no way do I wish to be involved in any thing that will cause trouble for anyone.

Record, vol. 2, at 342.

knew of the existence of an underlying crime.

We note further that the district court instructed that the jury must find knowledge of the jurisdictional elements, Record, vol. 2, at 275, and the jury apparently so found. Johnston testified that he personally told Balano that Carullo and he had robbed the Mission Coin Shop. Record, vol. 4, at 105. Johnston also testified that, with Balano present, he said that the getaway car had been ditched on the Missouri side of the river. *Id.* Finally, Carullo's grand jury testimony indicated that Johnston and Carullo informed Rosen and Balano of the robbery and that the robbers wanted $12,000 for the coins. Record, vol. 5, at 306. Hence, even under the heightened standards set by the instructions to the jury, we cannot say that the verdict was an unreasonable one.

■ Balano's argument that Carullo and Johnston were still in the escape phase of their crime when they reached the loan office is similarly without merit. There is no doubt that one who assists in an escape should be charged under 18 U.S.C. § 2 rather than 18 U.S.C. § 3. *See United States v. Willis,* 559 F.2d 443 (5th Cir. 1977); *United States v. Barlow,* 152 U.S.App.D.C. 336, 343–45, 470 F.2d 1245, 1252–54 (D.C. Cir. 1972); *United States v. Von Roeder,* 435 F.2d 1004, 1010 (10th Cir. 1970). It is not necessary, however, for the principals to have come to a final resting place for the escape to have ended. The escape phase doctrine was developed to deal with those who are entangled in the consummation of the crime itself, such as getaway car drivers. In contrast, accessories after the fact "[obstruct] justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime." *United States v. Barlow,* 152 U.S.App.D.C. at 344, 470 F.2d at 1253.

■ Carullo and Johnston crossed the state line again after leaving Sol's Loan Office, and the sale of the coins took place shortly thereafter. However, sufficient evidence was admitted at Balano's trial to permit the jury to infer that Carullo and Johnston had made prior arrangements to "fence" the coins at Sol's. *E. g.,* Record, vol. 4, at 81–87. Although they did not ultimately fence the coins there, a finding that the events at Sol's were beyond the escape phase is entirely consistent with the testimony of Carullo and Johnston. The getaway car had been abandoned, and no more furtive action was taken. We cannot consider an escape to continue until an ultimate buyer is found. The court's dismissal of the third count, based on 18 U.S.C. § 2, at the end of the first trial was therefore proper, and we cannot say the submission of the second count to the jury was improper.

■ Although his actions were certainly not overwhelming in scope, even as charged, we also cannot accept Balano's contention that he did not assist Carullo and Johnston so as to hinder their apprehension, trial or punishment. Balano argues that the evidence linked him only to the provision of a razor for Carullo and that further evidence showed Carullo to have been cleanshaven at the time. Brief for Appellant at 42. However, other evidence suggested that Carullo had both long, heavy sideburns and several days' growth of beard. *E. g.,* Record, vol. 5, at 176. If so, provision of the razor aided a change of appearance, as Carullo's grand jury testimony indicated. Record, vol. 5, at 307. Indeed, we would expect the razor to have served some purpose. Furthermore, although the evidence other than Carullo's equivocal grand jury testimony was circumstantial, it was sufficient to permit the jury to infer that Balano participated in the other actions alleged in the indictment: providing clothes, a suitcase and use of the bathroom. Johnston testified that Balano was given two gold coins to reward him for his efforts. Record, vol. 4, at 104; vol. 5, at 200. Therefore, we cannot agree, as Balano suggests, that his actions were "mere acts of charity," which did not hinder the apprehension of Carullo and Johnston. Brief for Appellant at 43.

### IV.

The trial judge determined that Reese, the purchaser of the stolen coins, was una-

vailable because of illness and directed him to answer a set of interrogatories. Nearly all of the answers were admitted into evidence. Balano charges as error the court's refusal to permit the admission of one particular answer, which he asserts was vital to the impeachment of Johnston's testimony. We find, however, no abuse of the trial court's discretion.

■ Johnston testified that of the 110 stolen coins, 106 were sold to Reese and four were given to Rosen and Balano. Record, vol. 5, at 198. As part of the disputed interrogatory answer, Reese appended a portion of his own grand jury testimony, Record, vol. 2, at 260–61, in which he quoted one Richard Ratty as saying, three months after the robbery, "[Johnston] told me that he had some gold coins to sell." Although Ratty would not say whether he had personally purchased any of the coins from Johnston, the conversation led Reese to conclude that he had not purchased all of the stolen coins. Reese said: "I don't think I got them all." *Id.* at 261. Balano contends that the Reese answer undercuts Johnston's testimony concerning the disposition of the coins and that "[e]vidence bearing on the credibility of an important witness is never collateral or irrelevant." Brief for Appellant at 44. Balano further argues that, because Reese was unavailable as a witness, "the defense had no other means to bring the evidence to light." *Id.* at 45. The trial judge, however, excluded the grand jury testimony on grounds of hearsay and lack of relevance. Record, vol. 6, at 467–68.

We cannot agree that the trial judge abused his discretion in excluding the answer. Particularly given the three month intervening period, the statements of Ratty were at best tangentially related to any issue at trial, including the credibility of Johnston. Moreover, another source of the evidence was apparently available. We must assume from the record before us that Ratty himself was available to testify; the government attorney so stated at trial, and Balano's attorney did not contradict him. Record, vol. 6, at 468. We cannot accept Balano's professed belief in the critical nature of the evidence when he did not take the most obvious step to secure that evidence.

## V.

■ Balano argues that the trial judge was required to grant the motion for judgment of acquittal at the end of the first trial and that, as a result, his conviction is barred under double jeopardy standards.[13] Balano's contention is based on the premise that only Carullo's grand jury testimony, not used in the first trial, and certain changed aspects of Johnston's testimony at the second trial made the conviction possible and, without that evidence, acquittal was mandated. We disagree.

The argument has plausibility only because of Balano's belief that knowledge of jurisdictional elements in the indictment must be proven. The new evidence did considerably strengthen the government's position on these issues. However, as we noted in Part III, *supra*, the government was not required to prove the surplusage of the indictment. Because there was other evidence sufficient to support a conviction,[14] the district judge did not abuse his discretion in denying the motion, and the double jeopardy issue is not reached.

## VI.

Finally, Balano argues that the indictment did not state a public offense because it did not sufficiently plead the existence of an underlying offense against the United States. The alleged deficiency lies in the

---

13. The denial of the motion was not appealable at the end of the first trial. *See United States v. Kaufman*, 311 F.2d 695 (2d Cir. 1963). Because of its double jeopardy ramifications, that denial is now clearly appealable. *See Abney v. United States*, 431 U.S. 651, 656–62, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

14. Based on his lengthy legal experience, the district judge expressed "grave doubts" that Johnston's testimony alone would in fact convince a jury. He correctly decided, however, that he should not invade the jury's fact-finding realm because a jury could convict on the basis of Johnston's testimony. Record, vol. 1, at 33.

failure of the indictment to allege affirmatively that the underlying crime was not barred by the statute of limitations. Furthermore, since an accessory after the fact violation presupposes the completion of an underlying crime, Balano argues that the date of that crime must be pleaded in order to show the proper ordering of events. We find these arguments to be without merit.

 The statute in question, 18 U.S.C. § 3 (1976), does require an underlying federal crime. By its terms, however, it does not require that the date of that crime be pleaded. Indeed, since the acts of an accessory occur *after the fact*, it is conceivable that the limitation period for an underlying crime could run while the accessory offense remains prosecutable. We believe that the accessory statute requires only the commission of an offense against the United States, not that the offense be prosecutable or actually prosecuted. Furthermore, the indictment clearly required proof that Balano knew of the underlying offense. For the government to provide that proof, as it did, the underlying offense must have been completed. No greater showing of proper ordering was necessary.

Balano incorrectly relies on *United States v. Gammill*, 421 F.2d 185 (10th Cir. 1970), in which the year of the offense was omitted from the indictment. The indictment therefore did not charge criminal conduct committed within the applicable limitation period. *Id.* at 186. No such problem exists in the instant case.

AFFIRMED.

HOLLOWAY and LOGAN, Circuit Judges, concurring:

We concur in everything stated in the opinion in this case except the discussion of the confrontation clause rights in Part II.A. of Judge McKay's opinion. We neither agree nor disagree with the discussion of those confrontation clause rights and *United States v. West*, 574 F.2d 1131 (4th Cir. 1978). We do not have to reach the point discussed there because if Balano had such rights they were waived, as the trial judge found and as this opinion affirms. We

would prefer to wait until we have a case which requires a decision on that issue.