**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                No. 99-4093

SHAHEEM JOHNSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                No. 99-4094

RAHEEM JOHNSON,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-97-314-A)

Argued: May 3, 2000

Decided: July 17, 2000

Before MURNAGHAN, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Murnaghan and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Kenneth Michael Robinson, THE ROBINSON LAW FIRM, Washington, D.C., for Appellant Shaheem Johnson; Preston Burton, LAW OFFICES OF PLATO CACHERIS, Washington, D.C., for Appellant Raheem Johnson. William Neil Hammerstrom, Jr., Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Cameron Robinson-Kourtesis, Nikolaos P. Kourtesis, THE ROBINSON LAW FIRM, Washington, D.C., for Appellant Shaheem Johnson. Helen F. Fahey, United States Attorney, Peter H. White, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

Shaheem and Raheem Johnson were convicted on nineteen counts related to their drug conspiracy, in furtherance of which they murdered five people. They now appeal their convictions. Finding no reversible error, we affirm.

I.

On June 4, 1998, appellants Shaheem and Raheem Johnson, identical twin brothers, were charged in federal district court with conspiracy to distribute cocaine; murder in aid of racketeering; murder using a firearm during a drug trafficking offense; and possession of a firearm by a convicted felon. Shaheem was charged with engaging in a continuing criminal enterprise; conspiracy to commit money laundering; carrying a firearm during a drug trafficking offense; distribution of cocaine base; and possession with intent to distribute cocaine base. Raheem was charged with murder in aid of racketeering; and murder using a firearm during a drug trafficking offense.

In a trial that lasted seven weeks, the government presented testimony and evidence that demonstrated that Shaheem, Raheem, and others organized a large-scale drug operation. The Johnsons obtained

2

cocaine from New York and Maryland, and distributed it in Ohio, Virginia, North Carolina, and Maryland. The government showed that in early 1992, Shaheem started the drug enterprise, and Raheem soon took over part of the distribution for his brother. They used numerous couriers and cars, titled in various names, to transport drugs, weapons, and cash.

The government also presented testimony and evidence that showed that Shaheem and Raheem were involved in five murders related to their conspiracy, as follows. On July 30, 1995, Raheem, Shawn Thomas, and Antonio Stevens drove to Philadelphia together, where Raheem, who believed Stevens had stolen his money, shot and killed Stevens. In March 1996, Raheem, Shaheem, and others shot and killed Bernard Franklin, whom Shaheem believed had robbed his residence and attacked his girlfriend. In December 1996, Shaheem and Raheem hired Eldon Brown to kill Richard Villa, whom they believed was planning to steal from them. And, in March 1997, Raheem and Rickey Piranti murdered Shawn Thomas and his girlfriend, Tracy Morgan. Because Thomas had recently been arrested, Raheem feared Thomas might incriminate Raheem in order to make a deal with the police on his own charges.

Shaheem and Raheem were both convicted on all counts charged except that as to their joint murder counts, Shaheem was found guilty of voluntary manslaughter and Raheem was found guilty of second degree murder. Both Shaheem and Raheem were sentenced to multiple life sentences. They now appeal.

II.

Shaheem argues that the district court erred when it failed properly to instruct the jury on the continuing criminal enterprise count. The federal CCE statute imposes penalties on "[a]ny person who engages in a continuing criminal enterprise." 21 U.S.C.§ 848(a). It further states that "a person is engaged in a continuing criminal enterprise if (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is a part of a continuing series of [such] violations." 21 U.S.C. § 848(c) (emphasis added). When the district court instructed the jury on the CCE count, it outlined the elements of the crime, and specifi-

cally instructed the jury that "[t]he phrase, [`]A continuing series of violations,['] means three or more violations of the federal narcotics laws, which are in some way related to one another." J.A. 837. At the time, this court had held that the jury did not need to unanimously find each violation that comprised the series. See United States v. Hall, 93 F.3d 126, 129 (4th Cir. 1996), cert . denied, 519 U.S. 1151 (1997). Accordingly, the district court did not instruct the jury that it must unanimously find each violation.

Shaheem claims that the district court erred when it failed to instruct the jury that it must be unanimous in its finding of each viola-tion comprising the continuing series of violations. Specifically, Shaheem contends that under Richardson v. United States, 526 U.S. 813 (1999), which was decided after his trial, the Supreme Court required that the jury be instructed that it must be unanimous in find-ing each individual "violation" supporting the CCE conviction.

As Shaheem concedes, "[t]rial counsel did not object to the jury instructions on Count 2, the CCE count," Appellants' Br. at 32, and, therefore, we review the district court's failure to instruct the jury on unanimity in the CCE charge for plain error, see id. Under plain error review, we can only correct an error not objected to at trial if there is an "error," that is "plain," and that"affect[s] substantial rights." United States v. David, 83 F.3d 638, 641 (4th Cir. 1996) (quoting United States v. Olano, 507 U.S. 725, 730-32 (1993)). And, even if the error is plain and affects substantial rights, then we should not exercise our discretion to correct the error "unless a miscarriage of justice would result or the error seriously affect[s] the fairness, integ-rity or public reputation of judicial proceedings independent of the defendant's innocence." United States v. Cedelle, 89 F.3d 181, 184 (4th Cir. 1996) (citations omitted) (internal quotation marks omitted).

We agree with Shaheem that, under Richardson, the district court erred when it failed to instruct the jury that it must unanimously find each violation that constitutes the continuing series of violations. See Richardson, 526 U.S. at 815 ("[A] jury has to agree unanimously about which specific violations make up the `continuing series of vio-lations.' . . . That is to say, a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant com-mitted some `continuing series of violations' but also that the defen-

4

dant committed each of the individual `violations' necessary to make up that `continuing series.'"); see also United States v. Brown, 202 F.3d 691, 699 (4th Cir. 2000) (recognizing that Richardson abrogated United States v. Hall, the case in which this court held that the jury need not unanimously find each violation).

We are likewise convinced that the error was plain error. In Johnson v. United States, 520 U.S. 461, 468 (1997), the Supreme Court held that an error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal." This is precisely the case that we have here. Not only our circuit but others held before Richardson that jury unanimity on which three offenses made up the series of violations was not necessary. See Hall, 93 F.3d at 129; United States v. Anderson, 39 F.3d 331, 350-51 (D.C. Cir. 1994); United States v. Lehder-Rivas, 955 F.2d 1510, 1519 n.6 (11th Cir. 1992). Richardson thereafter held that it was. See Richardson, 526 U.S. at 815.

Even so, we are satisfied that this is not a case in which we should exercise our discretion to correct the error. At least fifteen of the alleged fifty-seven overt acts the Johnsons engaged in in support of their conspiracy to distribute cocaine were violations of narcotics laws by Shaheem alone. J.A. 98-111. And, the government adduced overwhelming evidence in the form of co-conspirators' testimony and drugs found at Shaheem's residence to show that Shaheem committed a multitude of violations of the federal narcotics laws. Even Shaheem concedes that at least two counts for which Shaheem was convicted could serve as predicate violations for the CCE conviction.[1] See Appellants' Reply & Opposition to Government's Attempt to File Rule 28(j) Supplement, at 2. Shaheem's narrow point is that we cannot technically know whether the jury agreed unanimously on the third violation from any of the fifteen overt acts. And, technically, this may be correct. But if ever there were a case in which we are confident that there is not a miscarriage of justice, it is this one, with a multitude of offenses, none of which the defendant seriously chal-

_____

[1] Shaheem also concedes, by implication, that certain alleged overt acts could qualify as violations. See Appellants' Br. at 34 ("The government set forth over fifty overt acts in Count 1, many of which do not qualify as `violations' . . . .").

5

lenges.[2] Likewise, we are confident that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Because the evidence adduced at trial was overwhelming, we are convinced that "based upon the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt." United States v. Hastings, 134 F.3d 235, 244 (4th Cir.) (quoting Cedelle, 89 F.3d at 186), cert. denied, 523 U.S. 1143 (1998).

## III.

We now turn to the various other challenges the Johnsons make to their convictions and sentences.

_____

[2] Indeed, Shaheem's strategy throughout has been not to contest his involvement in drug trafficking. As illustrated by his counsel's closing argument, the focus of his trial strategy was not to claim innocence of drug dealing, but rather to persuade the jury not to convict him on the murder charges and thus avoid the death penalty. Shaheem's counsel told the jury in closing argument, "Nobody is fighting these drugs. There's no way out on these drugs. You don't hear me talking about those drugs, do you?" Trial Transcript, Vol. XXII (Dec. 11, 1998), at 191. He made other statements such as "Shaheem Johnson sold drugs," id. at 193, "That doesn't mean Shaheem isn't guilty of drug dealing," id. at 202, and Shaheem "[s]old drugs all his life," id. at 215. Likewise, on appeal Shaheem has acknowledged that he was involved in drug trafficking. As we discuss in Section III.A., infra, the Johnsons (Shaheem and Raheem) argue that the evidence was insufficient to convict them on a single drug conspiracy because they were involved in multiple conspiracies. In the course of making this argument, they concede drug dealing on a large scale:

> The [Johnsons] were both engaged in drug distribution activities, and they both knew about the other's operation, but those facts alone do not establish that they worked jointly in a common plan or scheme. The evidence revealed that appellants each had their own drug operations, with their own suppliers, distributors, and couriers. On occasion, they would purchase large quantities of narcotics together.

Appellants' Br. at 25.

6

A.

The Johnsons argue that the evidence presented at trial was insufficient to show that they were engaged in a single conspiracy to distribute cocaine. However, there was testimony that they traveled together to New York to obtain cocaine, J.A. 286-88; that they pooled their funds to purchase drugs from suppliers in New York, J.A. 215-17, 301-03; that together they purchased weapons from the same co-conspirator, J.A. 387-88; that Raheem took over territory to aid Shaheem in supplying cocaine to Maryland customers, J.A. 214-15; that they together shot and killed Bernard Franklin, someone whom they believed had stolen drug money from Shaheem, J.A. 194-95, 198-99, 227, 320, 343, 476, 702-05; and that together they hired someone to murder Richard Villa, whom they suspected wanted to steal from them, J.A. 520-21. Thus, we are confident that there was sufficient evidence in the record so that the jury could reasonably have found that they conspired together to distribute cocaine.

The Johnsons also claim that there was insufficient evidence to prove that they aided, abetted, and hired Eldon Brown to murder Richard Villa in violation of 18 U.S.C. § 1959. Under this section, the government had to prove that Brown killed Villa "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity . . . ." 18 U.S.C. § 1959. According to the Johnsons, Brown had several reasons to murder Villa, none of which would have increased Brown's position in the Johnsons' racketeering activity. However, we are convinced that there was sufficient evidence in the record for the jury to find both that there was an agreement between the Johnsons and Brown by which Brown would be paid from the Johnsons' racketeering proceeds to murder Villa, and that Brown was attempting to increase or maintain his position in the Johnsons' drug enterprise. Brown testified that he told the Johnsons that in order to "test" Villa, he told Villa that he was going to rob the Johnsons, and that Villa agreed to help. J.A. 516-18. He also testified that Shaheem told him that Shaheem and Raheem had work for Brown, and that they wanted him to murder "weak links" in the organization. J.A. 520 21. Finally, he testified that the Johnsons agreed to pay Brown $150,000 for three

7

murders, including the murder of Villa, J.A. 539, and that Shaheem gave Brown the handgun he used to murder Villa, J.A. 524.

B.

The Johnsons argue that the district court erred by not excluding hearsay statements allegedly made by Shawn Thomas regarding Raheem's involvement in the murder of Antonio Stevens. Thomas was unavailable to testify at trial because Raheem murdered him before trial. Three witnesses testified that Thomas told them that he was with Raheem when Raheem murdered Stevens.[3] The district court appears to have admitted Thomas' hearsay because, inter alia,[4] Raheem forfeited his hearsay objections, under Fed. R. Evid. 804(b)(6), by having caused the unavailability of Thomas as a witness.[5]

The district court did not abuse its discretion in so holding. Under Rule 804(b)(6), "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" is admissible as an exception to the rule against hearsay. Here, Raheem murdered Thomas at least in part to procure the unavailability of the only witness to his murder of Antonio Stevens.

_____

[3] The witnesses who recounted details of the murder, as told to them by Thomas, were Jeremy Williams, J.A. 434-42; Keah Lorrick, J.A. 583-97; and Larry Jackson, J.A. 633-48, 801-04.

[4] The district court also admitted the hearsay statements as statements against Thomas' penal interest, under Fed. R. Evid. 804(b)(3), as statements by a coconspirator made in furtherance of the conspiracy, under Fed. R. Evid. 801(d)(2)(E), and as otherwise reliable and probative statements under Fed. R. Evid. 807, the residual exception to the hearsay rule. However, because we hold that the district court did not abuse its discretion by admitting the statements under Fed. R. Evid. 804(b)(6), we decline to review the court's other grounds for admitting the testimony.

[5] In its summation of its ruling on the admissibility of the Thomas hearsay, the district court did not specifically cite Rule 804(b)(6) as a ground for its decision to admit the testimony. However, the government argued that Rule 804(b)(6) was the primary ground for admissibility, J.A. 411-27, and the court discussed the rule and its application to Raheem's case before its summation, J.A. 427.

Raheem argues that Thomas' statements were not properly admitted under this rule for two reasons. First, Raheem claims that the district court should have conducted a hearing to confirm, by clear and convincing evidence, that Raheem did cause Thomas' unavailability. But see United States v. Emery, 186 F.3d 921, 926 (8th Cir. 1999) (holding that a trial court need not hold a hearing under Rule 806(b)(6), but rather that it can admit the evidence at trial "contingent upon proof of the underlying murder by a preponderance of the evidence"), cert. denied, 120 S. Ct. 968 (2000). However, the court did hold a lengthy conference outside the presence of the jury to discuss the admission of Thomas' hearsay, as briefed by the government before trial. At that time Raheem's counsel did not request a separate evidentiary hearing, and did not contest that Raheem killed Thomas to prevent him from testifying against Raheem on matters related to the conspiracy. Rather, counsel's narrow argument was that the government could not prove that Thomas was killed to prevent him from testifying specifically about the Stevens murder. Therefore, we cannot conclude that the district court plainly erred when it accepted the government's position that Raheem did kill Thomas, presumably contingent on the government proving that Raheem did cause Thomas' unavailability. Even were we to conclude that the district court was required to conduct a separate evidentiary hearing to assess whether the government could show that Raheem did cause the unavailability of Thomas as a witness, we do not believe the district court's failure to conduct such a hearing in this case harmed Raheem. The government presented evidence to prove that Raheem murdered Thomas in the course of the trial, because Raheem was charged with murdering Thomas. Additionally, we are confident that, in this case, where the jury was convinced beyond a reasonable doubt that Raheem murdered Thomas in furtherance of the conspiracy, there was sufficient evidence presented at trial that Raheem caused Thomas' unavailability as a witness.

Second, Raheem claims that even though Rule 804(b)(6) waives his right to object to the fact that Thomas is not available for cross-examination, the hearsay testimony must be "otherwise admissible as if Thomas were available to testify." Appellants' Br. at 48 (citing United States v. Thevis, 665 F.2d 616 (5th Cir. 1982) (holding, before Rule 804(b)(6) was enacted, that even when the witness' unavailability is shown by clear and convincing evidence to have been caused

9

by the objecting party, "the trial court should scrutinize the proffered statements to ensure that the evidence is not unreliable"), cert. denied, 459 U.S. 825 (1982)). Even if we were to conclude that in order to admit statements under Rule 804(b)(6), the statements must be of a nature such that they would be admissible if the unavailable witness were available to testify, Raheem has not articulated how such a requirement would make Thomas' statements inadmissible. That is, Raheem has failed to articulate how, if Thomas had made the statements himself on the witness stand, they would have been inadmissible. According to the witnesses who did testify, Thomas claimed to have been present at the murder of Stevens and to have witnessed Raheem shoot and kill Stevens. Thus, Thomas apparently had firsthand knowledge of Raheem's murder of Stevens and presumably could have testified to this had Raheem not murdered Thomas.

C.

The Johnsons also claim that the district court erred when it denied their motion for severance, because they were actually involved in separate drug enterprises and were thus each prejudiced by evidence presented against the other at trial.[6]  For the reasons below, we conclude that the district court did not err when it denied the Johnsons' motion for severance. First, the district court provided a cautionary instruction to the jury to prevent it from grouping all of the evidence against both defendants:

> A separate crime is alleged against one or more of the defendants in each count of the indictment. Each alleged offense and any evidence pertaining to it should be considered separately by the jury.
>
> The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your ver-

_____

[6] The Johnsons also argue that because they are identical twins, the jury could easily have been confused, and they should have been tried separately. However, they cite nothing in the record to indicate that witnesses confused them or that they were not separately identified. Thus, we are not convinced that they were prejudiced by being tried together merely because they are twins.

10

dict as to any other offense charged against that defendant or any other defendant. You must give separate and individual consideration to each charge against each defendant.

J.A. 833-34; see United States v. Porter , 821 F.2d 968, 972 (4th Cir. 1987) ("No prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions, appraising the independent evidence against each defendant."), cert. denied, 485 U.S. 934 (1988). Second, the jury did distinguish the evidence against each defendant as demonstrated by the fact that it reached differing verdicts for the Johnsons on two counts involving murder. See id. ("Convictions should be sustained if it may be inferred from the verdicts that the jury meticulously sifted the evidence.").

D.

The Johnsons also claim that the district court erred when it did not permit them to present testimony related to the misconduct of a government witness, Rickey Piranti. The Johnsons wanted to question a witness about homicides allegedly committed by Piranti, which did not result in a conviction, in order to show that Piranti might have lied to avoid an indictment on those homicides. However, we are confident that the district court did not err when it refused to allow the Johnsons to question another witness about Piranti's alleged homicides. Fed. R. Evid. 608(b) provides that,

> [s]pecific instances of the conduct of a witness, for the purpose of attacking . . . the witness' credibility, other than conviction of crime . . ., may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness.

Under Rule 608(b), the Johnsons could not question other witnesses about Piranti's alleged homicides, but they were permitted to question Piranti, on cross-examination, about the alleged homicides. Additionally, we are confident that the district court did not err in refusing to allow the Johnsons to question a witness about Piranti's misconduct, because the district court found that such questioning would only confuse the jury on a tangential matter: "to allow introduction of this

11

question before this witness . . . is only going to inject confusion. It's not relevant to any factor in terms of proof of this conspiracy. It doesn't tend to prove or disprove any material fact in issue. Significant other evidence has already been presented and more will be presented, I'm sure, bearing on this witness' credibility, and all this will do is promote confusion, it's a collateral matter." J.A. 712-13.

E.

Raheem contends that the trial court abused its discretion when it admitted testimony by a forensic expert, Sandra Wiersema, that compared tire tread impressions recovered from the scene of Raheem's alleged killing of Antonio Stevens with tires recovered from Raheem's car. At trial he objected to the testimony on the grounds that it was prejudicial and inflammatory because millions of the particular tires that made the tread marks were in circulation and it was impossible to know when the tread marks had been left at the scene of the crime. However, we conclude that the court did not err in finding that the testimony's probative value outweighed any prejudicial value. The court properly weighed the factors relevant to the admissibility of the evidence -- eyewitness statements that a car matching the description of Raheem's car was seen leaving the scene of the murder; the timeliness in which the tire tread impressions were made after the murder; the fact that the expert could identify the particular make of the tire that left the marks; the fact that such tires were not manufactured until six months before the murder; and the likely number of vehicles with this type of tire -- and ruled that the tire tread impressions were relevant and material. And, defense counsel vigorously cross-examined Wiersema, and made the point, in closing argument, that the tire tread impressions only matched the tread marks to Goodyear Eagle Aqua Tred tires, and did not necessarily match Raheem's car to the impressions.

The Johnsons also argue that the district court erred by excluding their expert witness, Dr. Brownlee, from testifying regarding the cause and manner of death of two of the Johnsons' alleged homicide victims, Shawn Thomas and Tracy Morgan. We cannot say that the district court erred by excluding Brownlee's testimony, because the Johnsons did not disclose required information about the expert's scheduled testimony to the government before trial. Under Fed. R. Crim. P. 16(b)(1)(C), the Johnsons were obligated to disclose to the

12

government a written summary of the expert's expected testimony, including the witness' opinions, the bases and reasons therefor, and the witness' qualifications. Although the Johnsons do claim that they turned over Brownlee's resume to the government, there is nothing in the record that demonstrates that they complied with the other requirements of Rule 16, and the transcript indicates that defense counsel did not disclose the doctor's opinion to the government, J.A. 799.

F.

Raheem argues that he could not be sentenced consecutively under both 18 U.S.C. § 1959(a)(1) and § 924(j) for the murders of four individuals, because the charge for RICO murder, under section 1959, is a lesser included offense of the charge for committing a murder using a firearm during a drug trafficking offense, under section 924.**7**

The district court did not err when it sentenced Raheem separately for both convictions. The same conduct can support convictions and sentencing under two different federal statutes as long as each statute requires proof of an element that the other does not. See United States v. Terry, 86 F.3d 353, 356 (4th Cir. 1996) ("[F]or purposes of double jeopardy analysis we examine only the statutory elements to determine if the elements of the two crimes necessarily overlap. . . . Because each crime charged contains an element that the other does not, the statutes pass the Blockburger test." (citing Blockburger v. United States, 284 U.S. 299 (1932))), cert . denied, 524 U.S. 940 (1998). If the elements of the two statutes do not necessarily overlap,

_____

**7** To prove a violation of section 1959(a)(1), the government must show that there was (1) an enterprise engaged in racketeering activity, (2) murder or aiding and abetting another person in murdering, and (3) murder undertaken for the purpose of gaining entrance into or maintaining the defendant's position in the enterprise, or in exchange for anything of pecuniary value. See 18 U.S.C. § 1959(a)(1).

To prove a violation of section 924(j), the government must show that there was (1) a drug trafficking crime committed, (2) the use of a firearm during the commission of the trafficking crime, and (3) malice aforethought in causing the death of the victim in relation to the commission of the crime. See 18 U.S.C. § 924(j).

13

"then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent." Id. Under section 1959, there is no requirement, as there is under section 924, that a firearm be used or that there be a drug trafficking crime. Likewise, under section 924, there is no requirement, as there is under section 1959, that the killing have anything to do with a racketeering enterprise, or that there be a promise or exchange of anything of pecuniary value. Therefore, each statutory provision includes an element that the other does not, and multiple punishments are presumed.

Raheem argues that there was clear congressional intent that an individual not be separately punished for violating both provisions. He cites a House Report that is part of the legislative history of the Violent Crime Control and Law Enforcement Act of 1994, under which both statutory provisions were passed. It reads: "[i]n carrying out directions from the Congress, the U.S. Sentencing Commission shall . . . avoid duplicative punishment for substantially the same offense." H. Rep. No. 103-711, at 388. However, we do not read this direction to the Sentencing Commission to generally prohibit separate punishment for individual offenses, which have different elements, even when they relate to the same conduct. Accordingly, we cannot conclude that this general directive to the Sentencing Commission expresses clear congressional intent that an individual not be punished separately under section 1959 and section 924. Therefore, we conclude that the district court did not err when it permitted Raheem to be sentenced separately under each provision.**8**

CONCLUSION

For the reasons stated herein, we affirm the Johnsons' convictions on all counts.

AFFIRMED

_____

**8** We also reject Raheem's claim that his trial counsel was ineffective because the record does not support this claim. And, we have reviewed the claims made by Shaheem in his motion for leave to file a pro se supplemental brief, and finding those claims to be meritless, we deny the motion.